IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHANIEL D. COULSON, | ) | |
|     Petitioner, | ) | Civil Action No. 14-73 Erie |
| | ) | |
| v. | ) | District Judge Terrence F. McVerry |
| | ) | Magistrate Judge Susan Paradise Baxter |
| VINCENT MOONEY, et al., | ) | |
|     Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Respondents' motion to dismiss [ECF No. 9] be granted, that the petition for a writ of habeas corpus be dismissed, and that a certificate of appealability be denied.

### II. REPORT

#### A. Relevant Background

On June 1, 2009, Petitioner, Nathaniel D. Coulson, appeared before the Court of Common Pleas of Crawford County with his attorney, Bruce A. Barrett, Esq. In accordance with negotiations with the prosecution, Petitioner pleaded guilty to the offense of Rape of a Child in exchange for the *nolle pros* of 16 other charges filed against him. Petitioner had previously admitted to Children and Youth Services ("CYS") and the police that he had had sexual intercourse with the victim.

On September 30, 2009, the trial court sentenced Petitioner to 10-20 years' imprisonment. He did not file a direct appeal with the Superior Court of Pennsylvania. Accordingly, Petitioner's judgment of sentence became final on or around October 30, 2009, which is 30 days after the trial court sentenced him, and thus the date the time for filing a direct appeal with the Superior Court expired. Pa.R.A.P. 903(a); Gonzalez v. Thaler, — U.S. —, 132 S.Ct. 641, 653-56 (2012) (a judgment becomes final at the

1

conclusion of direct review or the expiration of time for seeking such review); Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (same).

On or around August 26, 2010, Petitioner filed a *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. § 9541 *et seq.* The PCRA court appointed Edward J. Hatheway, Esq., to represent him and counsel filed an amended PCRA petition. (Resp's Ex. A, ECF No. 9-1 at 2-15). In it, Petitioner alleged that he was innocent and that he lied to CYS and the police when he told them that he had sexual intercourse with the victim. He claimed that the police harassed him until he confessed. Petitioner also claimed that his trial attorney, Barrett, provided him with ineffective assistance. In support of this claim, Petitioner asserted that he told Barrett that he was innocent and, therefore, Barrett should have proceeded to trial instead of allowing him to plead guilty to the crime of Rape of a Child.

On July 5, 2011, the court dismissed the amended PCRA petition for lack of merit. (Resp's Ex. C, ECF No. 9-3 at 1. See also Resp's Ex. B, ECF No. 9-2 at 1-9, Commonwealth v. Coulson, No. CR 77-2009, slip op. (C.P. Crawford, Mar. 7, 2011)). It held:

> In the instant case, [Petitioner's] plea bargain resulted after extensive negotiations between attorney Barrett and the Commonwealth. A lengthy plea colloquy was undertaken where Petitioner pleaded guilty to Rape of a Child. During his plea colloquy this Court repeatedly encouraged Petitioner to ask questions if there was something he did not understand and informed the Petitioner that the decision to enter a guilty plea was his alone and that he should not enter a plea if he had been threatened or coerced. (Transcript of Plea Colloquy, pgs. 4-5, 16; 18; 27). Petitioner was informed that by pleading he was giving up the right to examine witnesses, such as the child victim, J.D. Id. at 7-8. Petitioner stated <u>he was satisfied with the services of his attorney, that no one forced or threatened him in any way to enter the plea</u> and that he was entering it of his own free will. Id. at 25 (emphasis added). Further, Petitioner stated he voluntarily went down to the Meadville City Police Department on January 8, 2009, where he was read a form stating he was not under arrest. Id. at 28-29. Petitioner stated that he signed that form. Id. [Petitioner] stated he gave the officer a statement about his involvement with the child-victim, and that the officer did not force, threaten, or pressure the Petitioner in any manner to give such a statement. Id. Petitioner stated he understood everything that was being said throughout the plea colloquy. Id. at 31-32.

2

During the colloquy, the Petitioner agreed that he did, in fact, have sexual intercourse with the child-victim at a time when she was ten and a half (10 ½) or eleven (11) years old. Id. at 30. Petitioner again agreed when questioned by this Court that he had sexual intercourse with the child-victim over the course of two years at various times. Id. at 32-33. After Petitioner was informed of the Megan's Law implications of such a plea, this Court again asked him if it was his intention to enter a plea of guilty to the offense of Rape of a Child, to which the Petitioner responded in the affirmative. Id. at 40. If there was any doubt whatsoever the record reflects the following:

> Ms. Digiacomo: Just, Mr. Coulson, for purposes of your plea today, you agree you engaged in sexual intercourse, in other words your penis went into J.D.'s vagina on at least one occasion when she was ten and a half or 11? Do you agree to that?
>
> The Defendant: (No audible responses.)
>
> Ms. Digiacomo: You have to say it out loud.
>
> The Defendant: Yes.

Id. at 41.

The record reflects Petitioner was repeatedly asked whether he had any questions or if he understood what was going on during the colloquy. He raised no questions and stated he was guilty several times. He responded in the affirmative when the Prosecutor specified in detail what he was pleading guilty to. More importantly, he specifically stated that he was not coerced by counsel, or by anyone else, to enter the guilty plea.

- - -

We find there is absolutely no merit to Petitioner's underlying claim [that he is innocent]. He spoke in detail concerning his sexual relationship with the child-victim, painting her as the aggressor and himself in a positive light as a role model for children. Petitioner stated that he believes young children and teens are attracted to him. In our September 17, 2009 Order, we found this as disturbing as we do now. As such, we find there is no merit to Petitioner's underlying claim that he did not have sexual intercourse with the child victim.

(Resp's Ex. B, ECF No. 9-2 at 3-5, Coulson, No. CR 77-2009, slip op. at 3-5).

In rejecting Petitioner's contention that Barrett was ineffective, the PCRA court held that Petitioner did not establish that Barrett's conduct was objectively unreasonable or that he was prejudiced.[1] It explained:

> Petitioner was given ample opportunity to alert the Court to his alleged innocence of or any coercion during the plea colloquy. Instead of asserting his innocence, the Petitioner initially contended that the child-victim was the aggressor. With regard to Petitioner's taped confession to the police, Petitioner's attorney, Mr. Barrett, alluded to the basis behind his legal strategy at the colloquy. Petitioner's counsel stated during the colloquy that he listened to the recorded statement Petitioner made to the police and discussed the possibility of any suppression issues with Petitioner. Mr. Barrett's statement during the colloquy reads as follows:
>
>> Judge the statement was recorded. I did obtain a copy of that. I did listen to the recorded statement. And I – Mr. Coulson and I did talk about whether or not there would be any suppression issue. Clearly in my opinion based on listening to the taped statement, Mr. Coulson's remarks were I mean not forced or coerced. In fact, he has asked at the end, you know[,] how he's been treated and Mr. Coulson said I have been treated very respectively [sic] according to my notes so I advised Mr. Coulson in my opinion there was no basis for any suppression of his statement.
>
> Id. at 31. We emphasize the fact that at the close of his taped confession to the police, the Petitioner stated he had been treated very respectfully. Id. Mr. Barrett stated in his opinion there would be no basis of any suppression of his statement, and this Court agrees.
> We find that Petitioner has not established that he has been prejudiced by his counsel's alleged ineffectiveness. The Petitioner was faced with seventeen (17) total counts, sixteen (16) of which were felony charges, and was only required to plead to one of those counts. Petitioner admitted that he committed these crimes to the police after he voluntarily went to the police station. Petitioner had ample time and several opportunities during his plea colloquy to notify this Court of his alleged innocence and/or any coercion on the part of his counsel and the police. If not for attorney Barrett's actions in this case,

---

[1] Ineffective assistance of counsel claims are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must show that his trial counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688. The law presumes that counsel was effective. Id. at 689. Strickland also requires that the petitioner demonstrate that he was prejudiced by his counsel's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different." Id. at 694. Pennsylvania law for judging ineffectiveness corresponds with the Strickland standard. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

4

> there is a reasonable probability that the outcome of the challenged proceedings would
> have resulted in a significantly longer sentence based upon the numerous felony charges
> and the evidence against Petitioner.

(Id. at 6-7).

On February 13, 2012, the Superior Court issued a Memorandum in which it affirmed the PCRA court's decision. (Resp's Ex. D, ECF No. 9-4 at 1-5, Commonwealth v. Coulson, No. 1178 WDA 2011, slip op. (Pa.Super.Ct. Feb. 13, 2012)). The Supreme Court of Pennsylvania denied a petition for allowance of appeal on July 18, 2012. (Resp's Ex. E, ECF No. 9-5 at 1).

On or around January 28, 2013, Petitioner filed a second *pro se* PCRA petition. (Resp's Ex. F, ECF No. 9-6 at 1-9). He once again claimed that his confession was false and that he "was unlawfully induced into pleading guilty when I am innocent of all charges that were filed on me." (Id. at 3). He also claimed that he had "new evidence of proof" in the form of medical records that showed that he was not living at 302 Poplar Street "as [the victim] stated[.]" He contended that the "last time I resided at 302 Poplar St. was late 90s to early 00s." (Id.)

On March 12, 2013, the PCRA court issued an order denying the second PCRA petition because it was "manifestly without merit" as Petitioner's claim of innocence was rejected in the first PCRA proceeding. (Resp's Ex. G, ECF No. 9-2 at 1-2. See also Resp's Ex. H, ECF No. 9-8 at 1). Petitioner did not file an appeal with the Superior Court.

On or around February 27, 2014, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). [ECF No. 8]. He raises three claims: (1) that Barrett was ineffective for "refus[ing] to tell the DA I wanted to go to trial, and would not do anything I told him to do"; (2) that his "plea of guilty was unlawfully induced because I was under the influence of my medication and not fully there"; and, (3) that the "new evidence" in the form of medical records that he referenced in his second PCRA

5

petition show that he was not living at the Poplar Street address "the alleged years" the crimes "were happening." [ECF No. 8 at 5, 7-8].

Respondents have filed a motion to dismiss. [ECF No. 9]. They contend, *inter alia*, that Petitioner's claims are untimely under the statute of limitations set forth in AEDPA, which is codified in relevant part at 28 U.S.C. § 2244(d). Petitioner did not file a Reply to Respondent's motion, but he has filed documents with the Court in which he continues to maintain his innocence and insist that he was not living at the two addresses (302 Poplar Street and 613 N. Main Street) that the victim said he was. [See ECF Nos. 14].[2]

**B.     Discussion**

AEDPA requires, with a few exceptions not applicable here, that habeas corpus claims under 28 U.S.C. § 2254 be filed within one year of the date the petitioner's judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A).[3] It also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

---

[2]     On February 6, 2015, Petitioner filed at ECF No. 17 a motion challenging the trial court's designation of him as a Sexually Violent Predator ("SVP"). Petitioner was required to raise all of his claims in his petition. [ECF No. 8 at 5, "For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States."] See also Rule 2(c)(1) of the Rules Governing Section 2254 Cases In The United States District Courts ("The petition must … specify all the grounds for relief available to the petitioner[.]"); Local Rule 2254(B)(2)(b) (In the petition for a writ of habeas corpus, "[t]he petitioner is to state *all* grounds for relief, provide specific facts supported each argument, and identify the relief requested.") (emphasis in original). Because Petitioner not did raise a challenge to his SVP designation in the petition, that claim is not before the Court. If it were, it would be dismissed for the same reason Petitioner's other claims should be: because it is untimely.

[3]     Petitioner does not establish that he is entitled to take advantage of any of the other provisions triggering the one-year limitations period. He did not suffer any impediment to filing his federal petition. 28 U.S.C. § 2244(d)(1)(B). His claims are not based on a new constitutional right recognized by the U.S. Supreme Court and made retroactive to cases on collateral review. Id. at § 2244(d)(1)(C). He has not shown that his claims are based upon a factual predicate that could not have been discovered through the exercise of due diligence. Id. § 2244(d)(1)(D). Petitioner's suggestion that he should be able to utilize § 2244(d)(1)(D)'s triggering date for the start of AEDPA's statute of limitations must be rejected. Evidence regarding where he lived during the time the crimes occurred does not qualify as a factual predicate that could not have been discovered through the exercise of due diligence. Obviously, Petitioner knew where he was living between 2006 and 2008, and if in fact he did not reside at the addresses claimed by the victim, he could have demonstrated that fact during his trial proceedings.

6

pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d).

As set forth above, Petitioner's judgment of sentence became final on or around October 30, 2009. Therefore, AEDPA's limitation period began to run on that date. Swartz, 204 F.3d at 419. He filed his first PCRA petition about 300 days later, on August 26, 2010. That PCRA petition statutorily tolled AEDPA's limitations period beginning on that date. 28 U.S.C. § 2244(d)(2).

Petitioner's PCRA proceeding concluded on July 18, 2012, which is the date the Supreme Court of Pennsylvania denied a PAA from the Superior Court's decision affirming the denial of PCRA relief. The next day, AEDPA's limitations period began to run again. Lawrence v. Florida, 549 U.S. 327 (2007) (a petitioner is not entitled to statutory tolling for the period available to file a petition for a writ of certiorari to the United States Supreme court following state collateral review). See also Swartz, 204 F.3d at 419-20. Since about 300 days had expired already from the limitations period, Petitioner had 65 more days – until on or around September 22, 2012 – to file a timely federal habeas petition. He did not file the instant petition until February 27, 2014, which is approximately 523 days outside of the limitations period. Therefore, his claims are untimely and must be dismissed with prejudice for that reason.[4]

Petitioner did not file a Reply to counter Respondents' motion that his claims must be dismissed as untimely. However, he does insist that he is innocent. In McQuiggin v. Perkins, — U.S. — , 133 S.Ct. 1924 (2013), the Supreme Court recognized that the actual innocence gateway to federal habeas review developed in Schlup v. Delo, 513 U.S. 298 (1995) extends to cases where a petitioner's claims would otherwise be barred by the expiration of the one-year statute of limitations prescribed by AEDPA. It

---

[4] Petitioner's second PCRA petition was filed well after AEDPA's statute of limitations expired, so it could not serve to statutorily toll any portion of the limitations period under 28 U.S.C. § 2244(d)(2).

held that, in order to avoid a miscarriage of justice, a federal court may entertain a § 2254 petition if the petition states facts that could amount to a convincing claim of actual innocence even if AEDPA's statute of limitations for such a petition has expired. McQuiggin, 133 S.Ct. at 1934-35. This "actual innocence" exception applies only to a "severely confined category" of cases, namely, those matters where the petitioner produces new evidence sufficient to show that "it is more likely than not that no reasonable juror would have convicted [the petitioner]." Id. at 1933 (quoting Schlup, 513 U.S. at 327)). The Supreme Court cautioned that "tenable actual-innocence gateway pleas are rare" (id. at 1928) and that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id. at 1936 (quoting Schlup, 513 U.S. at 316). There is no question that this is not the type of extraordinary case in which a petitioner can overcome AEDPA's statute of limitations by way of the miscarriage of justice gateway.

Based upon all of the foregoing, Respondents' motion to dismiss [ECF No. 9] should be granted. They are correct that Petitioner's claims are untimely.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be dismissed as untimely. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Respondents' motion to dismiss [ECF No. 9] be granted, that Petitioner's claims be dismissed with prejudice because they are untimely, and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 11, 2015

cc: The Honorable Terrence F. McVerry

9